**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LARRY DARNELL JONES,

    Petitioner,                  Civil No. 2:13-13864
                                        HONORABLE DENISE PAGE HOOD
v.                                 UNITED STATES DISTRICT JUDGE

CARMEN PALMER,

    Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

      Larry Darnell Jones, ("Petitioner"), confined at the Ionia Correctional Facility in Ionia, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for armed robbery, M.C.L.A. 750.529, carjacking, M.C.L.A. 750.529a, assault with intent to rob while armed, M.C.L.A. 750.89, two counts of assault with a dangerous weapon, M.C.L.A. 750.82, and felony-firearm, M.C.L.A. 750.227b.  For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I.  Background

      Petitioner was convicted following a jury trial in the Wayne County

Circuit Court.  This Court recites verbatim the relevant facts relied upon by

the Michigan Court of Appeals, which are presumed correct on habeas

review pursuant to 28 U.S.C. § 2254(e)(1).  *See e.g. Wagner v. Smith,* 581

F.3d 410, 413 (6th Cir. 2009):

> The victims, Lolita Nichols and Timothy Finn, testified that they
> were parked on the street outside Finn's house when a Chrysler
> mini-van pulled up nearby.  There were three individuals in the
> van.  They both testified that they were able to clearly see
> defendant in the passenger seat of the mini-van for 15 to 30
> seconds before observing him put on a mask and get out of the
> vehicle.  Defendant, with a gun in his hand, approached the
> victims in their car and ordered them out of the vehicle.
> Defendant fired the gun into the vehicle, blowing out a window but
> not hitting either victim.  Both left the vehicle, Finn tossing the
> keys.  Unable to find the keys, defendant grabbed Nichols' purse
> and got back into the mini-van.  The three suspects departed.
>
> Based upon a tip from a confidential informant, as well as the
> GPS tracking information from the victim's cell phone which had
> been in the stolen purse, the police went to an address on
> Chandler Park Drive.  They observed a Chrysler mini-van in the
> garage which matched the description of the suspect vehicle,
> including a partial license plate number supplied by Nichols.  A
> subsequent consent search of the house yielded evidence of the
> crime, including Nichols' cell phone.  Defendant was one of
> several people present in the house and was arrested.
>
> **********************************************************************
> The victims made a strong identification of defendant after having
> had an opportunity to observe him before putting on the mask.
> Moreover, a couple of hours after the robbery, defendant was
> found at the same location as the victim's cell phone and the
> mini-van used in the robbery.  Indeed, when the police requested
> permission to enter that location, defendant told the woman at the

door not to let the police in and said, "You're not getting in here without a warrant."  Given that defendant had no privacy interest in the house, his statement would seem to reflect a consciousness of guilt rather an invocation of his constitutional rights.

*People v. Jones*, No. 287201, 2011 WL 520846, at * 1-2 (Mich. Ct. App. Feb. 15, 2011).

Subsequent to petitioner's trial, appellate counsel filed a motion to remand for a *Ginther* [1] hearing on petitioner's ineffective assistance of trial counsel claim and a motion for re-sentencing.  The *Ginther* hearing was conducted on January 8, 2010, after which the judge denied petitioner's motion for a new trial on his ineffective assistance of counsel claim but granted his motion for re-sentencing. *People v. Jones,* No. 07-024701-01 (Wayne County Circuit Court, June 4, 2010).  Petitioner was re-sentenced to the same sentences that he originally received.

Petitioner's conviction was affirmed on appeal. *People v. Jones*, No. 287201, 2011 WL 520846 (Mich. Ct. App. Feb. 15, 2011); *reconsideration den.* April 7, 2011; *lv. Den.* 490 Mich. 897, 804 N.W. 2d 555 (2011).

Petitioner filed a post-conviction motion for relief from judgment with the trial court, which was denied. *People v. Jones,* No. 07-024701-01 (Wayne County Circuit Court, Sept. 3, 2013).

---

[1] *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973).

3

Petitioner filed a habeas petition, which was held in abeyance while petitioner finished exhausting his post-conviction claims in the state appellate courts. *Jones v. Rivard,* 2:13-CV-13864, 2013 WL 5450292, at *1 (E.D. Mich. Sept. 30, 2013).

The Michigan Court of Appeals denied petitioner's post-conviction appeal holding that "The defendant alleges grounds for relief that could have been raised previously and he has failed to establish good cause for failing to previously raise the issues, and had not established that good cause should be waived. MCR 6.508(D)(3)(a)." *People v. Jones,* No. 320597 (Mich.Ct.App. June 3, 2014).

The Michigan Supreme Court denied petitioner leave to appeal pursuant to M.C.R. 6.508(D). *People v. Jones,* 497 Mich. 971, 859 N.W. 2d 688 (2015).

On March 19, 2015, this Court reopened the petition to the Court's active docket, amended the caption, granted petitioner's motion to amend the petition, and ordered respondent to file an answer to the petition. *Jones v. Palmer*, No. 2:13-CV-13864, 2015 WL 1322196 (E.D. Mich. Mar. 19, 2015).

Petitioner seeks a writ of habeas corpus on the following grounds:

4

I. Petitioner is entitled to habeas relief where he was denied his constitutional right to the effective assistance of counsel when his attorney failed to offer exculpatory evidence, failed to investigate, misadvised Petitioner concerning prison time and failed to inform the trial court that Petitioner wanted to accept the prosecutor's plea offer.

II. The state courts unreasonably applied federal law in concluding that Petitioner was not denied the effective assistance of appellate counsel when counsel failed to raise a significant and obvious claim on direct appeal which would have produced a more favorable outcome.

III. The state court's decision that there was sufficient evidence to support Petitioner's convictions should be reversed as it amounts to an unreasonable application of federal law under the facts of the case. The prosecutor failed to present sufficient evidence to satisfy the due process standard of guilt beyond a reasonable doubt where the identification of defendant was weak.

IV. The state courts unreasonably applied federal law by concluding that the prosecutor did not deny Petitioner a fair trial by failing to disclose the existence of a pretrial identification procedure, US Const AM XIV [ ].

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for

6

evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III.  Discussion

### A.  Claims # 1 and # 2.  The ineffective assistance of counsel claims.

In his first claim, petitioner contends that he was denied the effective assistance of trial counsel.  In his second claim, petitioner contends that he was denied the effective assistance of appellate counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so

7

doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

8

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 562 U.S. at 101.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356,

9

371 (2010)).

In his first claim, petitioner initially contends that trial counsel failed to investigate facts which supported his claim of mistaken identity. Petitioner specifically alleges that trial counsel was ineffective for failing to call Alex Copeland, who lived at the house where the stolen property was discovered, to testify that he had admitted to being the masked gunman who had robbed and shot at the victims.  Alternatively, petitioner claims that trial counsel was ineffective for failing to call several of petitioner's family members to testify that Copeland had admitted to being the gunman.

The trial judge denied petitioner's claim by noting that petitioner's trial counsel testified at the *Ginther* hearing that he did not call Copeland because he was unaware of how to locate or to produce Copeland as a witness.  The judge, however indicated that Copeland neither appeared at trial or at the *Ginther* hearing and it could be presumed from this that had counsel located and called him as a witness, Copeland would have asserted his Fifth Amendment right against self-incrimination and would have refused to testify.  The judge concluded that trial counsel could not be ineffective for failing to call a witness who would assert his Fifth

10

Amendment right against self-incrimination. The judge further concluded that in the absence of any indication as to what Copeland would have said had he testified, there was no basis to find that petitioner was prejudiced by Copeland's absence. *People v. Jones,* No. 07-24701-01, Slip. Op. at * 4-5.

The judge further noted that trial counsel decided against introducing Copeland's out-of-court statement into evidence because there was no corroborating evidence to support it. Counsel was aware that a person, whom he believed to be Copeland, had threatened petitioner against incriminating him and saw a letter written to petitioner documenting some of these threats. The judge noted that this letter was never introduced into evidence at the hearing nor were the nature of the threats. The judge indicated that counsel did not testify that he was aware of the specifics of Copeland's participation in the robbery. Counsel did not testify that he was aware that Copeland admitted to being the gunman or that his statement would exculpate petitioner. The judge concluded that this information was "severely lacking in corroborating that Copeland was the gunman and defendant was uninvolved in the robbery." The judge further concluded that it was reasonable for trial counsel to assume, based on this

11

information, that there was insufficient evidence of corroborating circumstances that would establish the trustworthiness and admissibility of Copeland's statement pursuant to the penal interest exception to the hearsay rule contained in M.R.E. 804(b)(3).  The judge further concluded, based on the evidence produced at trial, that the proposed testimony of defendant's family members lacked any credibility. *Id.,* 6-8.

The Michigan Court of Appeals rejected petitioner's claim.  Although the Michigan Court of Appeals was "somewhat troubled" by counsel's explanation of being unable to locate Copeland, the Michigan Court of Appeals rejected petitioner's claim:

> [w]e are not persuaded that this failure was particularly prejudicial to defendant:  First, it is unclear what, if anything, Copeland would have testified to had he been produced as a witness.  If he was, in fact, involved in the robbery, it would seem likely that he would invoke his Fifth Amendment privilege against self-incrimination and refuse to testify.  In fact, Copeland did not testify at the *Ginther* hearing and the parties stipulated that, if called, Copeland would invoke his Fifth Amendment privilege.
>
> Furthermore, although it is unclear what role this information played in counsel's decision not to pursue Copeland as a witness, we do note that counsel testified that defendant had admitted to him that he was present during the crime.  Thus, even if Copeland had appeared to testify and admit his own involvement in the crime, it carried the risk that Copeland would also have implicated defendant as being involved in the crime.
>
> *People v. Jones*, 2011 WL 520846, * 2.

12

With respect to counsel's failure to call petitioner's family members to testify about Copeland's alleged confession, the Michigan Court of Appeals agreed with petitioner that trial counsel "may have been a bit too quick to dismiss the admissibility of the testimony of witnesses regarding Copeland's alleged statement." *Id.* The Michigan Court of Appeals rejected counsel's assertion at the *Ginther* hearing that a party needs independent evidence in order to provide the corroborating circumstances under M.R.E. 804(b)(3) for the admission of a statement against penal interest. *Id.*

The Michigan Court of Appeals nonetheless rejected the claim:

Nevertheless, we do not believe that we need to resolve the corroboration issues because, even if we were to conclude that the testimony of the witnesses would have been admissible, we do not believe that defendant can establish the prejudice element of the ineffective assistance of counsel test. That is, we do not believe that defendant can show that, even had the testimony been admitted, there is a reasonable possibility that the jury would have acquitted him. There was strong evidence against defendant. The victims made a strong identification of defendant after having had an opportunity to observe him before putting on the mask. Moreover, a couple of hours after the robbery, defendant was found at the same location as the victim's cell phone and the mini-van used in the robbery. Indeed, when the police requested permission to enter that location, defendant told the woman at the door not to let the police in and said, "You're not getting in here without a warrant." Given that defendant had no privacy interest in the house, his statement would seem to reflect a consciousness of guilt rather an invocation of his

13

constitutional rights.

On the other hand, the evidence in favor of defendant is weak at best. The witnesses who testified at the *Ginther* hearing regarding Copeland's alleged statement were defendant's sister, Boreetha Skoric, and his cousin, Karim Hadden, rather than independent witnesses. Skoric testified at the hearing that Copeland told her that he (Copeland) "was the shooter of the whole robbery that's all he said basically." Although Hadden reported a similar confession by Copeland, it was made only after defendant was convicted and, therefore, Hadden would not have been able to testify at defendant's trial. Moreover, neither indicated that Copeland exonerated defendant—that is, he did not explicitly state that defendant was not involved in the robbery.

In sum, we are not persuaded that the jury would have reached a different conclusion had they heard defendant's sister's testimony that Copeland had admitted to her his own involvement in the robbery, an admission that apparently did not include excluding defendant as one of the three individuals in the van.

*People v. Jones*, 2011 WL 520846, at *2-3.

Petitioner is not entitled to relief on his ineffective assistance of trial counsel claim for several reasons.

As both the trial court and the Michigan Court of Appeals noted, Mr. Copeland would have incriminated himself by admitting to being the masked gunman. Mr. Copeland had a Fifth Amendment right not to testify or to be forced to give any evidence that might be incriminating. Indeed, at the *Ginther* hearing, the parties stipulated that Copeland refused to testify and was asserting his Fifth Amendment right against self-

14

incrimination.  In light of the fact that Mr. Copeland could have invoked his

Fifth Amendment right against self-incrimination if called to testify, defense

counsel could have reasonably determined that it would not be in

petitioner's best interest to call him as a defense witness. *See e.g. Davis*

*v. Lafler*, 658 F.3d 525, 537 (6th Cir.2011).

Even if Mr. Copeland was the actual gunman, this would not

necessarily exonerate petitioner from being involved as an aider and

abetter.  The victims testifed that there were three individuals in the

Chrysler mini-van that their assailant got out of.  The police were able,

based on a confidential informant and using GPS tracking information from

the victim's stolen cell phone, to track this mini-van to a house on

Chandler Park Drive.  Petitioner was one of the people at this house,

where the victim's cell phone was recovered.  When the police sought

entry to the house, petitioner told the woman at the door not to let them in

and also informed the police they were not getting in without a warrant.

Because petitioner had no privacy interest in the house, this could be

perceived to reflect a consciousness of guilt on petitioner's part.  Counsel

was not ineffective in failing to call Copeland or introduce evidence that

Copeland admitted to being the masked gunman because this statement

would do nothing to explain away petitioner's presence at the house where the vehicle used in the crimes and the victim's stolen property had been recovered or petitioner's act of telling the woman not to let the police in. See *Davis v. Lafler*, 658 F.3d at 538.  In light of the fact that petitioner admitted to counsel to being present during the crime, counsel might not have wanted to have called Copeland to testify, because Copeland could have provided testimony linking petitioner to the crime. *Id.*

Petitioner also failed to show that trial counsel was ineffective for failing to call petitioner's family members to testify about Copeland's alleged confession to them.

The trial judge indicated in his opinion denying the motion for a new trial that he did not believe that the information provided by these witnesses was sufficiently corroborating to allow them to testify pursuant to M.R.E. 804(b)(3) concerning Copeland's out-of-court statement.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(*quoting Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)).  The trial court judge ruled that Copeland's out-of-court statement was not admissible under the penal

interest exception to the hearsay rule found in M.R.E. 804(b)(3).  Because

the judge ruled that Copeland's statement was insufficiently trustworthy to

qualify for admission under M.R.E. 804(b)(3), petitioner was not prejudiced

by counsel's failure to call these witnesses to testify. *See Davis v. Straub*,

430 F.3d 281, 290-91 (6th Cir. 2005).

Petitioner was not denied the effective assistance of counsel as a

result of counsel's failure to investigate and argue the culpability of other

suspects, in light of the substantial evidence of petitioner's guilt in this

case. *See Dell v. Straub,* 194 F. Supp. 2d 629, 650 (E.D. Mich. 2002)*.*

In his first claim, petitioner also contends that trial counsel was

ineffective for giving him incorrect advise about the sentencing guidelines

when discussing the prosecutor's plea offer prior to trial and in failing to

inform the court that petitioner wanted to accept the plea offer.

Respondent contends that petitioner's remaining ineffective

assistance of counsel claims are procedurally defaulted because petitioner

raised these claims for the first time in his post-conviction motion and

failed to show cause and prejudice for failing to raise these claims in his

appeal of right, as required by M.C.R. 6.508(D)(3).  Michigan Court Rule

6.508(D)(3) provides that a court may not grant relief to a defendant if the

motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review

18

unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).  If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  This order, however, did not refer to subsection (D)(3) nor did it mention petitioner's failure to raise his ineffective assistance of trial counsel claims on his direct appeal as a rationale for rejecting his post-conviction claims. Because the Michigan Supreme Court form order in this case citing Rule 6.508(D) is ambiguous as to whether it refers to procedural default or a denial of post-conviction relief on the merits, the order is unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the

19

basis for the state court's rejection" of petitioner's claims. *Id.*

The Michigan Court of Appeals denied petitioner's post-conviction appeal holding that "The defendant alleges grounds for relief that could have been raised previously and he has failed to establish good cause for failing to previously raise the issues, and had not established that good cause should be waived. MCR 6.508(D)(3)(a)." *People v. Jones,* No. 320597 (Mich.Ct.App. June 3, 2014).  The Michigan Court of Appeals clearly denied petitioner post-conviction relief based on the procedural grounds stated in M.C.R. 6.508(D)(3), thus, petitioner's post-conviction claims are procedurally defaulted pursuant to M.C.R. 6.508(D)(3). *See Ivory v. Jackson,* 509 F.3d 284, 292-93 (6th Cir. 2007). *See also Howard v. Bouchard,* 405 F.3d 459, 477 (6th Cir. 2005).  Petitioner's remaining ineffective assistance of trial counsel claims are procedurally defaulted. [2]

Petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default.  Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a

---

[2] Petitioner could not have procedurally any ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim.  *See Guilmette*, 624 F.3d at 291.  However, for the reasons stated below, petitioner is not entitled to habeas relief on this claim.

constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard."
>
> *Id.* at 463 U.S. at 754.

Moreover, "[a] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 753. (citations omitted).

> The Supreme Court has subsequently noted that:
>
> Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent."
>
> *Smith v. Robbins,* 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out

weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards,* 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting his ineffective assistance of trial counsel claims involving counsel's alleged ineffectiveness during the plea negotiation process. Petitioner was represented by the State Appellate Defender's Office. Appellate counsel filed a brief which included the first part of petitioner's ineffective assistance of trial counsel claim and a claim involving the miscoring of the sentencing guidelines. Appellate counsel successfully

moved for a *Ginther* hearing and obtained a re-sentencing for petitioner. [3]

Petitioner has not shown that appellate counsel's strategy in presenting

these claims and not raising other claims was deficient or unreasonable.

Moreover, for the reasons stated by the Michigan Attorney General in the

answer to the petition for writ of habeas corpus, none of the claims raised

by petitioner in his post-conviction motion were "dead bang winners."

Because the defaulted claims are not "dead bang winners," petitioner has

failed to establish cause for his procedural default of failing to raise these

claims on direct review. *See McMeans v. Brigano,* 228 F.3d 674, 682-83

(6th Cir. 2000).  In addition, because these post-conviction claims lack

merit, this Court must reject any independent ineffective assistance of

appellate counsel claim raised by petitioner.  "[A]ppellate counsel cannot

be found to be ineffective for 'failure to raise an issue that lacks merit.'"

*Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v.*

*Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

More importantly, this Court notes that in addition to the appellate

brief filed by appellate counsel, petitioner filed a supplemental Standard 4

---

[3]  *See* Defendant-Appellant's Brief and Motion to Remand [This Court's Dkt. # 13-15].

*pro per* brief on his appeal of right before the Michigan Court of Appeals. [4]

Although petitioner raised several claims, including what make up his third

and fourth claims, in this supplemental appeal brief, he did not present any

of the issues that he would subsequently raise for the first time on his

post-conviction motion for relief from judgment.  Petitioner took advantage

of the opportunity pursuant to the Michigan Court Rules to file a

supplemental appellate brief to raise claims that had not been raised by

his appellate counsel, yet failed to include what make up his remaining

ineffective assistance of trial counsel claims in his supplemental brief.

Petitioner has offered this Court no explanation why he failed to

raise these claims in his supplemental *pro per* brief that he filed as part of

his direct appeal.  Because petitioner has offered no reasons for his failure

to include these claims in his supplemental *pro per* brief on his direct

appeal, he has failed to establish cause to excuse the default of these

claims. *See Rockwell v. Palmer,* 559 F. Supp. 2d 817, 834 (W.D. Mich.

2008)(habeas petitioner did not show any cause for his failure to raise on

direct appeal his claim of ineffective assistance of trial counsel, where

---

[4] *See* Defendant's Pro Per Brief on Appeal [This Court's Dkt. # 13-15].  Standard 4 of
Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within
84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions."
*Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

petitioner had filed two briefs on his own behalf raising other claims that had not been asserted by his appellate counsel, but he offered no explanation for his failure to raise the ineffective assistance claim at the same time).

Petitioner has failed to establish cause to excuse his procedural default. When cause has not been shown, the Court need not consider whether actual prejudice has been demonstrated. *See, e.g., Smith v. Murray*, 477 U.S. at 533*.

Additionally, petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner's sufficiency of evidence claim (Claim # 3) is

25

insufficient to invoke the actual innocence exception to the procedural default doctrine. *See Malcum v. Burt,* 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's remaining procedurally defaulted claims. *Id.*

Petitioner is not entitled to relief on his first and second claims.

**B. Claim # 3. The sufficiency of evidence claim.**

Petitioner next claims that there was insufficient evidence to establish his identity as the man who robbed and assaulted the victims.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a

26

reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the

27

evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992).  A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 Fed. Appx. 147, 150 (6th Cir. 2003)(citing *People v. Turrell*, 25 Mich.App. 646, 181 N.W.2d 655, 656 (1970)).

In the present case, both of the victims positively identified petitioner at trial as their assailant.  The Court notes that "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction." *Brown v. Davis,* 752 F. 2d 1142, 1144 (6th Cir. 1985)(internal citations omitted).  In the present case, both victims unequivocally identified petitioner at trial as being the person who robbed and assaulted them.  This evidence was sufficient to support  petitioner's

28

convictions. *See Brown v. Burt,* 65 Fed. Appx. 939, 944 (6th Cir. 2003).

In addition, there was strong circumstantial evidence which linked petitioner to the crime.  Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle,* 200 F. 3d 987, 992 (6th Cir. 2000)(internal quotations omitted). Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d at 648.  Petitioner was arrested about two hours later at the house on Chandler Park Drive in where the van used in the robbery and one of the victim's cell phones was recovered. This additional circumstantial evidence supports a finding that petitioner was the perpetrator.

Because there were multiple pieces of evidence, including eyewitness testimony, to establish petitioner's identity as the perpetrator of the armed robbery, the Michigan Court of Appeals did not unreasonably apply *Jackson v. Virginia* in rejecting petitioner's sufficiency of evidence claim. *See Moreland v. Bradshaw,* 699 F. 3d 908, 919-21 (6th Cir. 2012).

### C.  Claim # 4.  The suggestive identification claim.

Petitioner finally contends that he was subjected to a suggestive

identification procedure.

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). However, to determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification. *Neil v. Biggers*, 409 U.S. 188 (1972). Five factors should be considered in determining the reliability of identification evidence: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the time and the confrontation. *Id.* at 199-200.

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a defendant meets this burden of proof that the burden then shifts to the

prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See United States v. Wade*, 388 U.S. 218, 240, n. 31(1967).  If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred.  As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir.1992).

Petitioner first contends that his rights were violated because the police conducted a photographic show-up, rather than a live line-up, even though petitioner was already in custody.  A defendant does not have a constitutional right to a corporeal line-up.  Instead, his request is addressed to the trial court's sound discretion. *See Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 866 (E.D. Mich. 2009); *Payne v. Smith,* 207 F .Supp. 2d 627, 645 (E.D. Mich. 2002).  Because petitioner has no constitutional right to a live line-up, he is not entitled to relief on this portion of his claim.

Petitioner next contends that the photographic array was unduly suggestive, but has submitted no evidence to either the Michigan courts or

31

this Court in support of his claim.  Conclusory allegations by a habeas

petitioner, without any evidentiary support, do not provide a basis for

habeas relief. *See, e.g., Washington v. Renico,* 455 F. 3d 722, 733 (6th Cir.

2006)(bald assertions and conclusory allegations do not provide sufficient

ground to warrant requiring an evidentiary hearing in a habeas

proceeding); *Workman v. Bell*, 160 F. 3d at 287.  Petitioner has provided

no copies of the actual photographic array nor has he given any reasons

why the array was unduly suggestive.  Petitioner is not entitled to habeas

relief because his claim that the photo array was unduly suggestive is

conclusory and unsupported. *See Champ v. Zavaras*, 431 Fed. Appx. 641,

654 (10th Cir. 2011).

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability

("COA") in order to appeal the denial of a habeas petition for relief from

either a state or federal conviction. [5]  28 U.S.C. §§ 2253(c)(1)(A), (B).  A

---

[5]  Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.*

This Court denies a certificate of appealability because reasonable

33

jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a

34

writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is

**DENIED.**

IT IS FURTHER ORDERED that petitioner will be granted leave to

appeal *in forma pauperis.*

                                  **s/Denise P. Hood**
                                  **HON. DENISE PAGE HOOD**
**Dated: January 8, 2016**        UNITED STATES DISTRICT JUDGE

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 8, 2016, by electronic means and/or ordinary mail.

                            s/K. Jackson
                            For Case Manager LaShawn Saulsberry
                            (313) 234-5014